[980 NYS2d 21]

Basis Yield Alpha Fund (Master), Respondent, v Goldman Sachs Group, Inc., et al., Appellants.

First Department, January 30, 2014

### APPEARANCES OF COUNSEL

*Boies, Schiller & Flexner LLP*, New York City (*Philip M. Bowman*, *Jonathan D. Schiller* and *Thomas Ling* of counsel), for appellants.

*Lewis Baach PLLC*, New York City (*Bruce R. Grace*, *Eric L. Lewis* and *Courtney L. Weiner* of counsel), for respondent.

### OPINION OF THE COURT

RENWICK J.

This is a case of a Wall Street firm (Goldman Sachs) being accused of selling mortgage-backed securities it knew to be "junk" and then betting against the same securities as the 2007 financial crisis unfolded. Specifically, plaintiff, Basis Yield Alpha Fund (Basis), a fund managed by an Australian hedge fund, Basis Capital Fund Management, commenced this action against several Goldman Sachs-related entities over investments in subprime mortgage-linked securities that contributed to the fund's demise.[1] The transactions took place on April 17 and June 13, 2007, with the sale of a security issued by a collateralized debt obligation (CDO) known as Point Pleasant 2007-1, Ltd., as well as Basis's entry into two credit default swaps that referenced securities from a similar CDO known as Timberwolf 2007-1, Ltd. Basis, which financed these transactions with loans from Goldman, reportedly lost $67 million when the bank began making margin calls on the products shortly after selling them to Basis. The margin calls quickly forced Basis into insolvency.

Initially, in 2010, Basis commenced an action for federal securities fraud and common-law fraud against Goldman in the United States District Court for the Southern District of New York. In an order dated July 21, 2011, the court dismissed the case on the ground that the underlying transactions were not domestic securities transactions and, therefore, are not subject to federal securities laws. The District Court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed the case without prejudice. In late 2011, Basis

---

**1.** Plaintiff brings this action against defendants Goldman Sachs Group, Inc., Goldman Sachs & Co., Goldman Sachs International and Goldman Sachs & Partners Australia Pty. Ltd. (collectively referred to as Goldman).

commenced this action against Goldman for: (1) common-law fraud; (2) fraudulent inducement; (3) fraudulent concealment; (4) breach of contract; (5) negligent misrepresentation; (6) breach of the implied covenant of good faith and fair dealing; (7) unjust enrichment; and (8) rescission. The factual allegations in the complaint are similar to those made in the federal action.

In lieu of answering the complaint, Goldman moved for an order compelling arbitration pursuant to the New York Convention and CPLR 7503 (a) or, in the alternative, dismissing the complaint for failure to state a cause of action (CPLR 3211 [a] [7]). Supreme Court denied the motion to compel arbitration, as well as the motion to dismiss with respect to the causes of action alleging fraud, negligent misrepresentation, unjust enrichment and rescission (37 Misc 3d 1212[A], 2012 NY Slip Op 52000[U] [2012]).[2]

■ As a threshold consideration, we examine Goldman's contention that the motion court improperly denied its motion to compel arbitration. Goldman does not challenge the motion court's refusal to compel arbitration pursuant to the New York Convention.[3] We note, however, that the motion court properly held that the purported document containing an arbitration clause did not meet the writing requirements of the New York Convention, which defines an "agreement in writing" to include "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams" (*see* New York Convention, art II, § 2). The document, which was attached to an email, was never signed by Basis, nor referred to in any exchange of correspondence between the parties.

Goldman also fails to satisfy the heavy burden of demonstrating that arbitration should be compelled pursuant to CPLR article 75. As the Court of Appeals has stated, "[A] party will not be compelled to arbitrate . . . absent evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes. The agreement must be clear, explicit

---

**2.** The court granted that portion of defendants' motion seeking to dismiss the claims of breach of contract and breach of the implied covenant of good faith and fair dealing, which are not at issue on this appeal.

**3.** The New York Convention is formally known as the 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards. The United States acceded to the New York Convention in 1970 and implemented its provisions by enacting chapter 2 of the Federal Arbitration Act (9 USC §§ 201-208).

and unequivocal" (*Matter of Waldron [Goddess]*, 61 NY2d 181, 183 [1984] [internal quotation marks and citations omitted]). An arbitration clause in an unsigned agreement may be enforceable but only "when it is evident that the parties intended to be bound by the contract" (*God's Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP*, 6 NY3d 371, 373 [2006]).

Here, there is a substantial question as to whether the parties agreed to arbitrate. In support of its motion to compel arbitration, Goldman relied on a mandatory arbitration clause set forth in a document entitled "General Terms and Conditions" that was attached to a November 10, 2006 email. Goldman claims to have sent the email to Basis in connection with the latter's opening of a trading account with Goldman. It is, however, undisputed that the document was never signed by anyone from Basis. More importantly, the director of Basis's managing entity swore in an affidavit that Basis never entered into the arbitration agreement Goldman proffers.

 Since the record does not affirmatively establish a valid obligation to arbitrate the issues raised herein, we must examine Goldman's alternative argument seeking dismissal of the action. With regard to the fraud allegations, Goldman argues that plaintiff failed to state a cause of action because the element of reasonable reliance is precluded as a matter of law by the disclaimer and disclosure in the offering circulars. We do not find that such argument is procedurally precluded by the fact that "Goldman's motion was made under CPLR 3211 (a) (7)." The concurring opinion incorrectly maintains that Goldman cannot rely on documentary evidence (the disclaimer and disclosure in the offering circulars) because a CPLR 3211 (a) (7) motion is limited to a review of the pleadings.

The motion court examined the purported documentary evidence, albeit over plaintiff's objections, but concluded that it did not bar the fraud claims. Plaintiff, however, has abandoned such procedural argument by failing to raise it on appeal (*see Matter of Raqiyb v Fischer*, 82 AD3d 1432, 1433 n [3d Dept 2011], citing *Matter of Ifill v Fischer*, 72 AD3d 1367, 1368 n [3d Dept 2010]). Instead, in its opening paragraph of the argument section opposing Goldman's motion to dismiss the fraud claims, plaintiff simply comments:

> "Goldman's argument on appeal strays far beyond addressing the sufficiency of the allegations. Instead, Goldman seeks to play on a field of *disputed issues*

*of fact.* But this provides no basis for dismissing this Complaint. That is particularly the case here when this Complaint is based not just on well-pleaded allegations, but on inculpatory Goldman documents disclosed in prior proceedings." (Emphasis added.)

Thus, on this appeal, plaintiff does not claim that this Court is "procedurally" precluded from examining the documentary evidence at issue because Goldman moved to dismiss under CPLR 3211 (a) (7). Rather, plaintiff appears to be arguing that the documentary evidence simply raises "disputed issues of fact," which, as plaintiff correctly asserts, is not enough for a dismissal under CPLR 3211 (a) (7).

In any event, the concurrence's contention that this Court is limited to the pleadings, when reviewing a motion to dismiss pursuant to CPLR 3211 (a) (7), is not a completely accurate statement of the law. What the Court of Appeals has consistently said is that evidence in an affidavit used by a defendant to attack the sufficiency of a pleading "will seldom if ever warrant the relief [the defendant] seeks *unless [such evidence] establish[es] conclusively that plaintiff has no cause of action"* (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 636 [1976] [emphasis added]; *see also Guggenheimer v Ginzburg*, 43 NY2d 268 [1977]).

A CPLR 3211 (a) (7) motion may be used by a defendant to test the facial sufficiency of a pleading in two different ways. On the one hand, the motion may be used to dispose of an action in which the plaintiff has not stated a claim cognizable at law. On the other hand, the motion may be used to dispose of an action in which the plaintiff identified a cognizable cause of action but failed to assert a material allegation necessary to support the cause of action. As to the latter, the Court of Appeals has made clear that a defendant can submit evidence in support of the motion attacking a well-pleaded cognizable claim (*see Rovello*, 40 NY2d 633; *Guggenheimer*, 43 NY2d 268; *see also Board of Managers of Fairways at N. Hills Condominium v Fairways at N. Hills*, 150 AD2d 32 [2d Dept 1989]).[4]

---

**4.** In his concurring opinion, Justice DeGrasse argues that factual allegations presumed to be true on a CPLR 3211 (a) (7) motion may be properly negated by an affidavit but not by documentary evidence. This distinction makes no sense. On a motion, the only possible way that documentary evidence can be submitted to the court is by way of affidavit. Thus, an affidavit from an individual, even if the person has no personal knowledge of the facts, may

When documentary evidence is submitted by a defendant "the standard morphs from whether the plaintiff stated a cause of action to whether it has one" (John R. Higgitt, *CPLR 3211 [A] [7] and [A] [7] Dismissal Motions—Pitfalls and Pointers*, 83 NY St BJ 32, 33 [2011] [emphasis omitted]; John R. Higgitt, *CPLR 3211 [A] [7]: Demurrer or Merits-Testing Device?*, 73 Albany L Rev 99, 110 [2009]). As alleged here, if the defendant's evidence establishes that the plaintiff has no cause of action (i.e., that a well-pleaded cognizable claim is flatly rejected by the documentary evidence), dismissal would be appropriate (*see e.g. Constructamax, Inc. v Dodge Chamberlin Luzine Weber, Assoc. Architects, LLP*, 109 AD3d 574 [2d Dept 2013]; *Rabos v R&R Bagels & Bakery, Inc.*, 100 AD3d 849, 851-852 [2d Dept 2012]; *Skillgames, LLC v Brody*, 1 AD3d 247, 250 [1st Dept 2003]; *Kliebert v McKoan*, 228 AD2d 232 [1st Dept 1996], *lv denied* 89 NY2d 802 [1996]; *Board of Managers of Fairways at N. Hills Condominium*, 150 AD2d 32).

Thus, there is no procedural impediment to evaluating the merits of Goldman's motion to dismiss the fraud claims. To make a prima facie claim of fraud, a complaint must allege misrepresentation or concealment of a material fact, falsity, scienter on the part of the wrongdoer, justifiable reliance and resulting injury (*see Dembeck v 220 Cent. Park S., LLC*, 33 AD3d 491, 492 [1st Dept 2006]). Even in the absence of any affirmative misrepresentation or any fiduciary obligation, a party may be liable for nondisclosure where it has special knowledge or information not attainable by plaintiff, or when it has made a misleading partial disclosure (*see Williams v Sidley Austin Brown & Wood, L.L.P.*, 38 AD3d 219, 220 [1st Dept 2007]; *L.K. Sta. Group, LLC v Quantek Media, LLC*, 62 AD3d 487, 493 [1st Dept 2009]).

In this case, plaintiff's theory of fraud does not rest upon a single decisive event which manifestly demonstrates Goldman's wrongdoing, but on a series of interrelated events which, viewed

properly serve as the vehicle for the submission of acceptable attachments which provide evidentiary proof in admissible form, like documentary evidence. In such situations, the affidavit itself is not considered evidence; it merely serves as a vehicle to introduce documentary evidence to the court. Our judgment as to the conclusive nature of the adduced evidence should not depend on such an artificial distinction. The key should be whether the evidence adduced conclusively negates an element of the cause of action. Here, the documentary evidence defendants allege is dispositive was in fact submitted via affidavit. Thus, even under the concurrence's view, it was properly considered.

as whole, portray the alleged fraudulent scheme. In essence, plaintiff alleges that in 2007, the Point Pleasant and Timberwolf securities were designed primarily not just as instruments to earn returns for Goldman's clients but to solve a huge internal problem Goldman then faced: its enormous financial exposure to residential mortgage-backed securities (RMBS). Specifically, the complaint asserts:

> "By no later than late 2006, based on its extensive involvement in and detailed knowledge of the subprime residential home mortgages market, Goldman, at its highest levels, had arrived at the informed and firm view that the value of securities in this market would likely go into sharp decline in the near future. This situation presented both a problem and an opportunity for Goldman. The problem was that Goldman held a large portfolio of such securities, which would decline in value as the market fell, and Goldman needed to offload these securities onto third parties. The opportunity was the potential profit that Goldman could make by shorting such securities. Goldman devised a plan that both addressed its problem and took advantage of its opportunity. Putting profits before integrity and acting to the detriment of its own clients, Goldman constructed a number of new CDO offerings in early 2007 based on securities Goldman deliberately selected for their poor quality and likely failure—many from its own inventory—and marketed them aggressively to its clients while at the same time shorting the market in order to profit at its clients' expense. Goldman used these new CDOs as one vehicle for shorting the market. The Point Pleasant and Timberwolf offerings were a key part of this Goldman strategy, and provided a vehicle for Goldman to unload its toxic inventory and to profit from the decline in value of the very securities it was recommending that its clients purchase."

■ On these facts, plaintiff claims that Goldman engaged in a fraudulent scheme. The fraud claims sufficiently detail the allegations relating to Goldman's internal valuation of the securities and the independence of the underlying asset selection process. They also allege that Goldman's interests were not really aligned with the fund's interests. Goldman does not dispute that these allegations, as amplified in the 30-page complaint,

are sufficiently detailed to state a fraud cause of action of common-law fraud (affirmative representation and inducement) and fraudulent concealment. Instead, Goldman argues that plaintiff cannot establish the element of reasonable reliance (an element of both affirmative representation and concealment) as a result of the disclosures and disclaimers in the offering circulars for the Point Pleasant and Timberwolf securities.

The law is abundantly clear in this state that a buyer's disclaimer of reliance cannot preclude a claim of justifiable reliance on the seller's misrepresentations or omissions unless (1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented or undisclosed; and (2) the alleged misrepresentations or omissions did not concern facts peculiarly within the seller's knowledge (*Danann Realty Corp. v Harris*, 5 NY2d 317, 323 [1959]; *MBIA Ins. Corp. v Merrill Lynch*, 81 AD3d 419 [1st Dept 2011]; *Capital Z Fin. Servs. Fund II, L.P. v Health Net, Inc.*, 43 AD3d 100, 111 [1st Dept 2007]). Accordingly, only where a written contract contains a specific disclaimer of responsibility for extraneous representations, that is, a provision that the parties are not bound by or relying upon representations or omissions as to the specific matter, is a plaintiff precluded from later claiming fraud on the ground of a prior misrepresentation as to the specific matter (*see e.g. Silver Oak Capital L.L.C. v UBS AG*, 82 AD3d 666, 667 [1st Dept 2011]; *Steinhardt Group v Citicorp*, 272 AD2d 255, 256 [2000]). In other words, in view of the disclaimer, no representations exist and that being so, there can be no reliance (*HSH Nordbank AG v UBS AG*, 95 AD3d 185, 201 [1st Dept 2012]).

In this case, Goldman argues that the disclaimers and disclosures in the offering circulars are sufficiently specific and applicable to information that was either misrepresented or undisclosed. First, Goldman points out that the offering circulars required the purchaser to disclaim reliance on "any advice, counsel or representation whether oral or written of [the sellers] . . . other than in this offering circular" and concomitantly advised the purchaser to "consider and assess for themselves the likely rate of default of the references obligations." Secondly, Goldman points out that the offering circulars disclose that "[a]ccording to recent reports, the residential mortgage in the United States has experienced a variety of difficulties and change in economic conditions that may adversely affect the performance and Market of RMBS." Thirdly, Goldman points out that the offering circulars disclosed that an affiliate "will

act as the sole Synthetic Security counterparty," which would "create a conflict of interest," and that it would be purchasing credit protection from the CDOs.

■ These disclaimers and disclosures, in our view, fall well short of tracking the particular misrepresentations and omissions alleged by plaintiff. As indicated, plaintiff alleges that Goldman structured, marketed and sold the Point Pleasant and Timberwolf CDOs with the intent of reducing its long term exposure to subprime risk by betting against them. The complaint further alleges that Goldman not only knew that it was selling toxic assets (based upon Goldman's internal valuation of the securities and its involvement in the underlying asset selection process) to its clients and failed to disclose those sales to investors, but that Goldman also sought to profit from its own actions. Yet, the aforementioned disclosures simply provide boilerplate statements regarding the speculative and risky nature of investing in mortgaged-backed CDOs and the possibility of market turns. If plaintiff's allegations are accepted as true, there is a "vast gap" between the speculative picture Goldman presented to investors and the events Goldman knew had already occurred.

Nor did Goldman's disclosure that it was taking a "short" position[5] in the securities (as indicated by the disclosure that an affiliate would be acting as a "CDO counterparty" and purchasing credit protection from the CDOs) remedy this "vast gap" of information. Undoubtedly, such disclosures would have been sufficient to alert a purchaser of mortgage-backed securities that the seller would attempt to earn a profit by exploring "arbitrage" positions in the market.[6] Plaintiff, however, is alleging more than the fact that Goldman was a mere "contrarian" looking to capitalize on over-priced long RMBS bets that would be unprofitable when the housing prices collapsed, contrary to

---

**5.** Short selling is a method of profiting when security prices fall. If you are "short" a security, it means that you expect the price to go down. Thus, in practical terms, going short can be considered the opposite of the conventional practice of "going long," whereby an investor profits from an increase in the price of the asset (*see* Larry Harris, Trading and Exchanges: Market Microstructure for Practitioners at 41 [2012]).

**6.** In economics and finance, arbitrage is the practice of taking advantage of a price difference between two or more markets: striking a combination of matching deals that capitalize upon the imbalance, the profit being the difference between the market prices (*see* Andrei Shleifer & Robert W. Vishny, *The Limits of Arbitrage*, 52 J Fin 35-55 [1997]; Wei Xiong, *Convergence Trading with Wealth Effects: an Amplification Mechanism in Financial Markets*, 62 J Fin Econ 247-292 [2001]).

the general belief at the time that prices would continue to perpetually rise. Again, plaintiff claims that Goldman had more than a profit motive. As exhaustively explained in the complaint, plaintiff claims that Goldman not only structured, marketed and sold Point Pleasant and Timberwolf CDOs, but that it did so with the intent to rid itself of long term exposure to subprime mortgages, and to profit by selling them to its clients and betting against its own long term position.

Even if the disclaimers and disclosures were to be viewed as sufficiently specific, "a purchaser may not be precluded from claiming reliance on misrepresentations of facts peculiarly within the seller's knowledge" (*Steinhardt Group*, 272 AD2d at 257, citing *Tahini Invs. v Bobrowsky*, 99 AD2d 489, 490 [2d Dept 1984]; *see Danann*, 5 NY2d at 322; *China Dev. Indus. Bank v Morgan Stanley & Co., Inc.*, 86 AD3d 435, 436 [1st Dept 2011]; *Swersky v Dreyer & Traub*, 219 AD2d 321, 328 [1st Dept 1996]).

In this case, plaintiff alleges that because of what Goldman knew from its role as an underwriter and because of what the mortgage investigations conducted on its behalf (Clayton report) revealed, Goldman had access to nonpublic information regarding the deteriorating credit quality of subprime mortgages. These allegations are supported by quotes from Goldman-authored documents, complete with dates and names, expressing derogatory remarks about the CDOs. These allegations are more than adequate to allege the peculiar knowledge exception to the disclaimer bar. While evidence may ultimately demonstrate that Goldman did not have any special knowledge upon which it relied or which plaintiff could have ascertained by exercising reasonable diligence, these are issues which are "inappropriate to determine[,] as a matter of law[,] based solely on the allegations [of the] complaint" (*P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V.*, 301 AD2d 373, 378 [1st Dept 2003]; *see MBIA Ins. Corp. v Merrill Lynch*, 81 AD3d 419 [1st Dept 2011]).

The principal case upon which Goldman relies in support of its disclaimer bar argument, *HSH Nordbank AG v UBS AG* (95 AD3d 185 [2012]), does not mandate a different result. *Nordbank* involved a plaintiff, HSH, that entered into a credit default swap with the defendant, UBS, in which, like here, the plaintiff assumed the risk of losses on a $2 billion portfolio of mortgaged-backed securities related to the U.S. market.

*Nordbank* is inapposite here for two significant reasons. First, unlike here, in *Nordbank* the disclaimers and disclosures were

sufficiently specific to the particular type of information allegedly misrepresented. In *Nordbank* "the core subject of the complained-of representations was the reliability of the credit ratings used to define the permissible composition of the reference pool" (*Nordbank*, 95 AD3d at 196). Yet, the disclaimers and disclosures "relate[d] directly or indirectly to the reliability of credit ratings in the relevant market" (*id.* at 199). In view of the disclaimer, this Court held that no representation existed, and thus, there could not have been any reliance (*id.*).

Secondly, in *Nordbank*, this Court found that the alleged misrepresentation did not concern facts peculiarly within the seller's knowledge. On the contrary, the reliability of the credit ratings could have been ascertained from reviewing market data or other publicly available information (*id.*). Indeed, the allegations of the complaint itself established that HSH could have uncovered any misrepresentation of the risk of the transaction through the exercise of reasonable due diligence within the means of a financial institution of its size and sophistication (*id.*).

Here, however, neither the complaint nor the documentary evidence establishes plaintiff's peculiar knowledge of the misrepresentations and omissions. In this regard, this case is more akin to *China Dev. Indus. Bank v Morgan Stanley & Co. Inc.* (86 AD3d 435 [2011]). There, the plaintiff's fraud claims were based on facts strikingly similar to those alleged here with regard to mortgage-backed securities. The plaintiff alleged that the seller of credit default swaps, Morgan Stanley, fraudulently disposed of "troubled collateral (i.e., predominantly residential mortgage-backed securities)" (*China Dev.*, 86 AD3d at 436). This Court refused to dismiss the fraud claims based on certain disclaimers because, like here, the pleadings sufficiently alleged that the seller possessed peculiar knowledge of the facts underlying the fraud (*id.*; *cf. MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 87 AD3d 287, 291-292 [1st Dept 2011] [court sustained the sufficiency of a fraud claim based on alleged misrepresentations "concerning the origination and quality of the mortgage loans underlying" mortgage-backed securities]).

In sum, we find that the motion court properly declined to dismiss the fraud claims since the disclaimers and disclosures in the offering circulars do not preclude, as a matter of law, plaintiff's claim of justifiable reliance on Goldman's misrepresentations and omissions. Of course, discovery will flesh out whether Goldman's misrepresentations and omissions were the

reasons plaintiff invested in Point Pleasant CDOs and Timberwolf credit default swaps, or instead whether plaintiff merely entered into a bad deal.

■ ■ ■ We find, however, that the remaining claims should have been dismissed. The negligent representation cause of action should have been dismissed because there is no allegation in the complaint of a relationship of trust and confidence between the parties (*see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 180-181 [2011]). Likewise, the unjust enrichment cause of action should have been dismissed because the Point Pleasant and Timberwolf transactions were governed by written agreements. The theory of unjust enrichment is one created in law in the absence of any agreement (*see Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561, 572 [2005]). Finally, the motion court should have also dismissed the rescission cause of action because the complaint fails to allege the absence of a "complete and adequate remedy at law" (*see Rudman v Cowles Communications*, 30 NY2d 1, 13 [1972]).

Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered October 19, 2012, which, insofar as appealed from, denied defendants' motion to compel arbitration or, in the alternative, to dismiss the causes of action for fraud, fraudulent inducement, fraudulent concealment, negligent misrepresentation, unjust enrichment, and rescission, should be modified, on the law, to the extent of granting that part of the motion seeking to dismiss the causes of action for negligent misrepresentation, unjust enrichment and rescission, and otherwise affirmed, without costs.

DeGrasse, J. (concurring). This appeal is from an order denying a dispositive motion by defendants Goldman Sachs Group, Inc., Goldman Sachs & Co., Goldman Sachs International, and Goldman Sachs & Partners Australia Pty. Ltd. (collectively referred to as Goldman). As relevant to this appeal, the motion was for an order compelling arbitration, or, in the alternative, dismissing the claims for fraud, negligent misrepresentation and unjust enrichment for failure to state a cause of action (CPLR 3211 [a] [7]). Although I have no quarrel with the result reached by the majority, I write separately primarily because, for reasons discussed later in this writing, the majority opinion employs an inapt analysis in its discussion of the facial sufficiency of the fraud cause of action.

Plaintiff, Basis Yield Alpha Fund (Master) (BYAFM), alleges

that it was defrauded by Goldman's materially false statements and omissions in connection with an April 17, 2007 sale of a security issued by a collateralized debt obligation (CDO) known as Point Pleasant 2007-1, Ltd. as well as BYAFM's June 13, 2007 entry into two credit default swaps that referenced securities from a similar CDO known as Timberwolf 2007-1, Ltd. BYAFM claims to have lost approximately $10 million in the Point Pleasant transaction and $56 million in the Timberwolf credit default swaps as a result of Goldman's conduct.

Preliminarily, I agree that the motion court properly denied the application to compel arbitration pursuant to CPLR 7501. For reasons outlined by the majority, the record supports the conclusion that there was no written agreement to arbitrate within the contemplation of CPLR 7501. Goldman, as the party seeking arbitration, has the burden of establishing an agreement to arbitrate (*see e.g. Matter of Siegel v 141 Bowery Corp.*, 51 AD2d 209, 212 [1st Dept 1976]). As BYAFM argues, Goldman fails to lay a foundation for the "General Terms and Conditions" (GTC), the document which it proffered as an agreement to arbitrate. Goldman submitted the GTC as an exhibit to the affirmation of its counsel who did not claim to have personal knowledge of the document, its source or its significance. Nor was the GTC qualified as a business record. As such, there is no evidentiary foundation for the GTC and, for that matter, any of the documents submitted in support of Goldman's motion. Therefore, the unsworn documents proffered by Goldman have no probative value given the absence of such an evidentiary foundation (*cf. J.K. Tobin Constr. Co., Inc. v David J. Hardy Constr. Co., Inc.*, 64 AD3d 1206 [4th Dept 2009]). Goldman correctly cites *Olan v Farrell Lines* (64 NY2d 1092 [1985]), for the proposition that an attorney's affidavit may be used as a vehicle for submitting evidence. Such evidence, however, must be in admissible form (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). For example, the proof found sufficient in *Olan* consisted of "evidentiary proof in admissible form" that happened to be "placed before the court by way of an attorney's affidavit" (*Olan*, 64 NY2d at 1093). Contrary to Goldman's argument, a document lacking evidentiary foundation does not become admissible by mere attachment to an attorney's affirmation. Although the majority finds "a substantial question as to whether the parties agreed to arbitrate," I would go further by saying that Goldman failed to make a prima facie showing on this issue on the basis of the lack of an evidentiary foundation for the GTC.

I now turn to the motion to dismiss the fraud claim for failure to state a cause of action. In sustaining the complaint, the court held as follows:

> "There are two categories of representations at issue: representations of fact and expressions of opinion. The representations of fact include Goldman's representations to BYAFM about its internal marks, the manner in which the reference securities were selected, and Goldman's position as a real counterparty. BYAFM has properly pled all elements of fraud as to these representations with substantial detail." (37 Misc 3d 1212[A], 2012 NY Slip Op 52000[U], *7 [2012].)

The thrust of Goldman's argument regarding the sufficiency of the fraud claim is based on our holding in *HSH Nordbank AG v UBS AG* (95 AD3d 185 [1st Dept 2012]), a case cited or referenced 68 times in the briefs before us. In its opening brief, Goldman argues:

> "In *HSH Nordbank*, this Court, addressing substantively identical allegations, held that a CDO investor failed to state a claim because reasonable reliance was precluded as a matter of law by substantially identical *express disclaimers of reliance and disclosures in the offering materials*. The trial court erred in failing to follow this binding precedent." (Emphasis added.)

The disclaimers and disclosures referred to by Goldman are set forth in offering circulars that it claims were issued to BYAFM.

In *HSH*, we dismissed a fraud cause of action pursuant to CPLR 3211 (a) (1) and (7), citing undisputed documentary evidence that the plaintiff in that case did not rely on the defendant's advice, assented to inherent conflicts of interest and was warned of risks in the underlying transaction (*HSH*, 95 AD3d at 188). It should be noted that *HSH* involved a motion to dismiss the complaint on the basis of a defense founded upon documentary evidence (CPLR 3211 [a] [1]) and for failure to state a cause of action (CPLR 3211 [a] [7]; *HSH*, 95 AD3d at 192). In this case, Goldman's motion was made under CPLR 3211 (a) (7) only. The difference is significant and should be dispositive of Goldman's challenge to the fraud causes of action.

CPLR 3211 (a) (1) may be invoked where it is claimed that "documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law"

(*see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002] [citation omitted]). On the other hand, as recently stated by the Court of Appeals, a motion under CPLR 3211 (a) (7) "limits us to an examination of the pleadings to determine whether they state a cause of action" (*Miglino v Bally Total Fitness of Greater N.Y., Inc.*, 20 NY3d 342, 351 [2013], citing *Rovello v Orofino Realty Co.*, 40 NY2d 633 [1976]). Therefore, contrary to what the majority holds today, the disclaimers and disclosures in the offering circulars and other documents Goldman relies upon are of no moment for purposes of this CPLR 3211 (a) (7) motion. As BYAFM aptly argued below, there was no basis for the motion court to consider documents outside the complaint at this stage of the proceeding.

Contrary to what the Court held in *Miglino*, the majority posits that it "is not a completely accurate statement of the law" to say "that this Court is limited to the pleadings, when reviewing a motion to dismiss pursuant to CPLR 3211 (a) (7)." The majority goes on to partially quote *Rovello* as saying that "evidence in an affidavit used by a defendant to attack the sufficiency of a pleading 'will seldom if ever warrant the relief [the defendant] seeks *unless [such evidence] establish[es] conclusively* that plaintiff has no cause of action' " (*see Rovello*, 40 NY2d at 636). It is unclear how this partial quotation supports the majority's position. It does, however, distort what the Court of Appeals said in *Rovello* by conflating evidence with affidavits. To be precise, the *Rovello* Court said: "It seems that after the amendment of 1973 *affidavits* submitted by the defendant will seldom if ever warrant the relief he seeks unless too the *affidavits* establish conclusively that plaintiff has no cause of action" (*id.* [emphasis added]). Here, the majority overlooks the fact that affidavits and documentary evidence have two different roles for purposes of CPLR 3211 (a) motions (*see Regini v Board of Mgrs. of Loft Space Condominium*, 107 AD3d 496, 497 [1st Dept 2013]; *Fontanetta v John Doe 1*, 73 AD3d 78, 85 [2d Dept 2010]). As stated by the Court of Appeals:

> "Under CPLR 3211 (a) (1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law (*see, e.g, Heaney v Purdy*, 29 NY2d 157). In assessing a motion under CPLR 3211 (a) (7), however, a court may freely consider affidavits submitted by the plaintiff to remedy any defects in

the complaint (*Rovello v Orfino Realty Co., supra*, at 635)" (*Leon v Martinez*, 84 NY2d 83, 88 [1994]).*

The majority also sidesteps a threshold issue regarding the purported Timberwolf offering circular that it has decided to consider with respect to the instant CPLR 3211 (a) (7) motion. As stated in its brief, BYAFM categorically denies that it ever entered into any contract that references or incorporates the Timberwolf offering circular and it does not reference or rely upon the same in its complaint. Goldman, in no position to argue otherwise, does not touch upon BYAFM's assertion in its reply brief. Like the GTC submitted in support of the motion to compel arbitration, the offering circular lacks an evidentiary foundation because it is merely annexed to counsel's affirmation (*cf. J.K. Tobin Constr. Co., Inc. v David J. Hardy Constr. Co., Inc.*, 64 AD3d at 1206). Nevertheless, without resolving the issue, the majority unnecessarily passes upon the legal effect of a document that lacks foundation in the record.

As the majority notes, BYAFM's objection to the use of documentary evidence was waived because it was not set forth in its respondent's brief. The discussion, however, does not end there. The issue is not beyond our review since it was briefed before the motion court.

> "The fact that a party abandons or fails to urge a particular line of reasoning in support of its contention does not prevent an appellate court from sustaining such contention for that very reason. The appellate court is not required to reject a contention sound in its ultimate conclusion because the path followed in reaching it is different from the one marked out in the argument of counsel before it" (10A Carmody-Wait 2d § 70:490, citing *Morris Plan Co. v Globe Indem. Co.*, 253 NY 496 [1930]).

---

* It is unfortunate for stare decisis that this distinction, articulated by the Court of Appeals, "makes no sense" to the majority. Moreover, the majority's thesis that a CPLR 3211 (a) (7) motion may be supported by documentary evidence is unsupported, if not belied, by the cases it cites. For example, the underlying motion, like the motion in *HSH*, was made under CPLR 3211 (a) (1) as well as (a) (7) in *Constructamax, Inc. v Dodge Chamberlin Luzine Weber, Assoc. Architects, LLP* (109 AD3d 574 [2d Dept 2013]), *Rabos v R&R Bagels & Bakery, Inc.* (100 AD3d 849 [2d Dept 2012]) and *Kliebert v McKoan* (228 AD2d 232 [1st Dept 1996], *lv denied* 89 NY2d 802 [1996]). *Board of Managers of Fairways at N. Hills Condominium v Fairways at N. Hills* (150 AD2d 32 [2d Dept 1989]) involves a motion for summary judgment. The motion in *Skill-games, LLC v Brody* (1 AD3d 247 [1st Dept 2003]) was made on the basis of an affidavit as opposed to documentary evidence.

As we stated in *Fenton v Consolidated Edison Co. of N.Y.* (165 AD2d 121 [1st Dept 1991], *lv denied* 78 NY2d 856 [1991]), "[T]he fact that [the appellant] limited the scope of its appeal is of no moment since [the respondent] is entitled to have the determination affirmed on any ground he properly raised before the IAS court" (*id.* at 125). As BYAFM challenged Goldman's use of purported documentary evidence below, our review is not circumscribed by the arguments made in its respondent's brief. In this case, the better course would have been to disregard the proffered documentary evidence and construe CPLR 3211 (a) (7) as narrowly as the Court did in *Miglino*. This is especially true because no foundation for the Timberwolf offering circular has been established (*see Miglino*, 20 NY3d at 351).

In my view, the complaint is sufficient to withstand Goldman's CPLR 3211 (a) (7) motion insofar as it alleges a scheme devised and executed for the specific purpose of defrauding BYAFM by selling the Point Pleasant security and the Timberwolf credit default swaps for more than they were worth (*see e.g. CPC Intl. v McKesson Corp.*, 70 NY2d 268, 286 [1987]). The fraud cause of action is also sustainable to the extent that it is alleged that Goldman falsely stated that it had only one mark (opinion of value) for each of its securities in response to BYAFM's inquiry regarding same. Notwithstanding the arm's length nature of the transactions described in the complaint, such a false representation is actionable since Goldman, having assumed to respond to BYAFM's inquiry, was under a "duty 'to speak fully and truthfully' " (*see e.g. Atlantic Bank of N.Y. v Carnegie Hall Corp.*, 25 AD2d 301, 306 [1st Dept 1966]). I am in accord with the dismissal of the negligent misrepresentation, unjust enrichment and rescission causes of action for the reasons given by the majority.

TOM, J.P., ACOSTA and RICHTER, JJ., concur with RENWICK, J.; DEGRASSE, J., concurs in a separate opinion.

Order, Supreme Court, New York County, entered October 19, 2012, modified, on the law, to the extent of granting that part of the motion seeking to dismiss the causes of action for negligent misrepresentation, unjust enrichment and rescission, and otherwise affirmed, without costs.