## A.G.P./Alliance Global Partners, LLC v Allarity Therapeutics, Inc.

### 2025 NY Slip Op 30733(U)

### March 3, 2025

### Supreme Court, New York County

### Docket Number: Index No. 653636/2024

### Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

------------------------------------------------------------------X

A.G.P./ALLIANCE GLOBAL PARTNERS, LLC,

                                    Plaintiff,

                - v -

ALLARITY THERAPEUTICS, INC.,

                                    Defendant.

------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 653636/2024 |
| **MOTION DATE** | 09/13/2024 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (MS001) 19, 20, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, 33, 34, 35
were read on this motion to/for                    DISMISS                    .

    Plaintiff A.G.P./Alliance Global Partners, LLC (AGP) brings this action against defendant Allarity Therapeutics, Inc. (Allarity), asserting that Allarity purportedly breached an agreement for AGP to serve as Allarity's exclusive placement agent for the placement of securities (NYSCEF # 2 – compl or Complaint). Before the court is Allarity's motion to dismiss the Complaint pursuant to CPLR 3211(a)(1) and (a)(7) (NYSCEF # 19). AGP opposes the motion. For the following reasons, Allarity's motion is granted.

<h2 style="text-align:center">Background[1]</h2>

    AGP is a New York-based investment bank and wealth management firm that assists companies with capital raising, corporate finance, and corporate advisory services (compl ¶¶ 2, 9). Allarity is a Boston-based clinical-stage precision medicine company whose common stock trades on the Nasdaq (*id.* ¶¶ 3, 10).

    In April 2023, pursuant to a Placement Agency Agreement, dated April 19, 2023 (the Placement Agreement or PA), Allarity agreed to retain and compensate AGP as its "exclusive placement agent" for a contemplated offering and placement of Allarity's securities (*see id.* ¶¶ 4, 14-15; NYSCEF # 3 – PA at 1 & § 3). As is relevant here, under the Placement Agreement, Allarity granted AGP a "Right of First Refusal" to act as Allarity's "sole book-running manager, sole underwriter or sole placement agent" in the event that Allarity "decide[d] to raise funds by means

---

[1] The following facts are drawn from the Complaint and its exhibits, as well as, when necessary, those documents accompanying the parties' submissions. These facts are assumed true solely for purposes of resolving this motion.

**653636/2024 A.G.P./ALLIANCE GLOBAL PARTNERS, LLC vs. ALLARITY THERAPEUTICS, INC.**          **Page 1 of 8**
**Motion No. 001**

of a public offering (including [any] at-the-market [offering])[,] a private placement[,] or any other capital-raising financing of equity, equity-linked or debt securities" (the Right of First Refusal) (*see* compl ¶ 5, 16; PA § 13).[2] The Right of First Refusal lasted "until the 12-month anniversary of the Closing Date," i.e., April 21, 2024 (*see* compl ¶ 5, 16; PA § 13). This meant that, for an approximately one-year period, Allarity had to first offer AGP the role of sole placement agent, underwriter, or investment banker for any of its financing or capital-raising efforts before it could offer that same role to another investment bank (*see* compl ¶¶ 5, 23). Allarity later confirmed the Right of First Refusal in a prospectus, dated July 5, 2023, filed with the United States Securities and Exchange Commission (SEC) as part of an offering of Allarity's securities (*see id.* ¶ 17; NYSCEF # 29 at 67).[3]

Nearly eight months later, on January 22, 2024, AGP and Allarity entered into a "limited waiver" of the Right of First Refusal (the Limited Waiver) (compl ¶ 18; NYSCEF # 4 – Waiver at 1). The Limited Waiver applied "only with respect to [Allarity's] pursuit of an at-the-market offering" (an ATM), and the parties agreed that it would "expire after the close of business on February 29, 2024" (compl ¶ 18; NYSCEF # 4 – Waiver at 1). Allarity submits that this limited waiver came about following Nasdaq's attempts to delist Allarity's stock at the end of 2023 (*see* NYSCEF #s 21-22).

After executing the Limited Waiver, Allarity approached another investment bank, Ascendiant Capital Markets, LLC (Ascendiant), to handle a contemplated ATM offering of Allarity's common stock (*see* compl ¶¶ 6, 19). Approximately six days prior to the expiration of the Limited Waiver, the parties outlined the principal terms of this proposed ATM offering handled by Ascendiant (the Ascendiant ATM) in a term sheet, dated February 23, 2024 (the Term Sheet) (NYSCEF # 23 – Term Sheet). Although the Term Sheet did not "constitute a binding obligation," it nevertheless provided terms related to, among other aspects of the Ascendiant ATM, the completion of due diligence, appropriate securities sale and account documentation, and regulatory clearances, the filing of a prospectus supplement, and the corresponding sale of Allarity's securities (*see id.* at 1-2).

On March 19, 2024, nearly three weeks after the Limited Waiver expired, Allarity executed an ATM Issuance Sales Agreement with Ascendiant in connection with the Ascendiant ATM (the ATM Sales Agreement) (*see* compl ¶ 19; NYSCEF # 30 at 2; NYSCEF # 31 at 1). That same day, Allarity also filed a prospectus supplement with the SEC, which publicly announced the Ascendiant ATM (compl ¶ 19; NYSCEF # 5). In the following months, Allarity then filed a series of

---

[2] In an affirmation submitted in connection with Allarity's motion, Thomas Jensen, Chief Executive Officer for Allarity, explains that an at-the-market offering is a type of offering wherein new securities must be sold at the current market price of the existing securities (*see* NYSCEF # 20 ¶ 5).
[3] As alleged, in addition to the Placement Agreement's right of first refusal, Allarity also granted AGP a right of first refusal that was to last for a period of twelve months following the closing of the offering outlined in the July 2023 prospectus (i.e., until July 2024) (compl ¶ 17; NYSCEF # 29 at 67).

**653636/2024 A.G.P./ALLIANCE GLOBAL PARTNERS, LLC vs. ALLARITY THERAPEUTICS, INC.**     **Page 2 of 8**
**Motion No. 001**

[* 2]

prospectus supplements to announce, among other updates, an increase the maximum aggregate offering price of Allarity's common stock (*see* compl ¶ 20; NYSCEF #s 6-16).

By May 17, 2024, Allarity had sold 18,756,178 shares of its common stock pursuant to the Ascendiant ATM, in turn generating gross proceeds of $22,537,915 (compl ¶¶ 30-31; NYSCEF # 16 at 1). As originally contemplated by the Term Sheet, and confirmed by the ATM Sales Agreement, Ascendiant was entitled to receive a "sales commission of three percent (3%) of the gross proceeds" of the securities sold pursuant to the Ascendiant ATM (*see* compl ¶ 21; Term Sheet at 2; NYSCEF # 5 at 1; NYSCEF # 31 at 35). As a result, by May 17, 2024, the Ascendiant ATM had generated at least $676,137.45 of fees to Ascendiant (*see* compl ¶ 32).

AGP maintains that, under the Right of First Refusal, Allarity was first required to notify AGP of the Ascendiant ATM and give AGP an option to serve as Allarity's sole placement agent, underwriter, or investment banker for that ATM offering (compl ¶ 23). It further alleges that it was ready, willing, and able to execute that transaction had it been given the option to do so by Allarity (*id.* ¶ 24). But Allarity neither extended AGP an opportunity to exercise its Right of First of Refusal in connection with the Ascendiant ATM, nor sought a further waiver of the Right of Refusal beyond the expiration date of the Limited Waiver (*see id.* ¶¶ 26-27). Therefore, in AGP's view, it should have received those fees generated by the Ascendiant ATM (*see* ¶¶ 21-27).

On May 2, 2024, AGP, through its counsel, sent a demand letter to Allarity requesting that it comply with its contractual obligations under the Placement Agreement and pay AGP all amounts to which it would have been purportedly entitled under the Ascendiant ATM (compl ¶ 28; NYSCEF # 17 at 1). Allarity failed to respond to that demand letter and has, to date, not made any payment to AGP arising from the Ascendiant ATM (compl ¶¶ 29, 34).

## Legal Standards

On a motion to dismiss pursuant to CPLR 3211, a pleading is "afforded a liberal construction" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]). Courts will "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*id.*).

Under CPLR 3211(a)(7), a party may seek dismissal when a pleading "fails to state a cause of action." Such a motion tests the facial sufficiency of a pleading, assessing whether "plaintiff has stated a claim cognizable at law" or, if the claim is cognizable, whether "plaintiff has failed to assert a material allegation necessary to support the cause of action" (*see Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 AD3d 128, 135 [1st Dept 2014]). Whether a plaintiff can ultimately

**653636/2024 A.G.P./ALLIANCE GLOBAL PARTNERS, LLC vs. ALLARITY THERAPEUTICS, INC.**   **Page 3 of 8**
Motion No. 001

3 of 8

establish its allegations is not considered when determining a motion to dismiss under CPLR 3211(a)(7) (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]).

Meanwhile, CPLR 3211(a)(1) provides that a party may move for judgment dismissing one or more causes of action asserted against it on the ground that "a defense is founded upon documentary evidence." A motion to dismiss on this basis will be granted "only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]; *Amsterdam Hospitality Group, LLC v Marshall-Alan Assoc., Inc.*, 120 AD3d 431, 433 [1st Dept 2014]). To be considered "documentary evidence," a paper must satisfy the following criteria: "(1) it is 'unambiguous'; (2) it is of 'undisputed authenticity'; and (3) its contents are 'essentially undeniable'" (*VXI Lux Holdco S.A.R.L. v SIC Holdings, LLC*, 171 AD3d 189, 193 [1st Dept 2019]). When such documentary evidence is submitted in support of a motion to dismiss, "the standard morphs from whether the plaintiff stated a cause of action to whether it has one" (*Basis Yield Alpha Fund*, 115 AD3d at 135).

## Discussion

In this action, AGP asserts that Allarity breached its obligations under the Placement Agreement by failing to offer AGP an opportunity to exercise its Right of First Refusal over the Ascendiant ATM (compl ¶¶ 35-42). Allarity now moves to dismiss. In support of its motion, Allarity argues that AGP waived its claim for investment banking fees in connection with the Ascendiant ATM because the Term Sheet between Allarity and Ascendiant was signed within the Limited Waiver's waiver period (*see* NYSCEF # 24 – MOL at 5-8; NYSCEF # 35 – Reply at 2-5). Allarity maintains that contrary the Complaint's allegations, nothing in the Limited Waiver required that an ATM sale be effectuated or consummated within the waiver period; rather, it only required Allarity to be in "pursuit of an at-the-market offering" by that time (MOL at 5-7; Reply at 3-5). Accordingly, because the Term Sheet demonstrates a "pursuit" contemplated by the Limited Waiver, it conclusively establishes that Allarity did not breach the Placement Agreement by entering into the Ascendiant ATM without first offering the opportunity to AGP (*see* MOL at 5-8; Reply at 2-5).

AGP opposes the motion, arguing that it has sufficiently stated a claim for breach of the Placement Agreement and that Allarity's attempts to contradict those allegations with documentary evidence fail (NYSCEF # 34 – Opp at 5-10). To start, AGP asserts, Allarity's selectively limits the definition of the term "pursuit," as used the Limited Waiver, to only those circumstances in which Allarity began to seek out an offering (*id.* at 6-7). But, AGP continues, the dictionary definition of the term "pursuit" includes other definitions that are effectively synonymous with the term "effectuate" (*id.* at 7). For this reason, AGP contends, Allarity's reliance on the Limited Waiver's use of the term "pursuit" is not a proper basis to disregard AGP's well-pled allegations (*id.* at 6). Separately, AGP avers that, even if Allarity signed

**653636/2024 A.G.P./ALLIANCE GLOBAL PARTNERS, LLC vs. ALLARITY THERAPEUTICS, INC.**      **Page 4 of 8**
**Motion No. 001**

[* 4]

4 of 8

the Term Sheet prior to the Limited Waiver's expiration date, that did not bring the Ascendiant ATM within Limited Waiver because the Term Sheet was a non-binding summary of terms that neither governed Allarity's subsequent sale of securities through Ascendiant nor formed a commitment for Ascendiant to handle the offering (*id.* at 8-10).

At the outset, AGP does not seriously challenge that the Term Sheet is "documentary evidence" under CPLR 3211(a)(1), nor could it (*see generally Amsterdam Hospitality Group*, 120 AD3d at 432 [observing that documentary evidence includes an "entire range of documents reflecting out-of-court transactions, such as contracts, deeds, wills, mortgages, and even correspondence"]; *4720 Third Ave. Hous. LLC v CA Ventures LLC*, 211 AD3d 417, 418-419 [1st Dept 2022] [relying on term sheet as documentary evidence under CPLR 3211(a)(1)]). Accordingly, the primary question here is whether the Term Sheet submitted by Allarity in support of its motion establishes "a pursuit of an at-the-market offering" under the Limited Waiver so as to utterly refute AGP's allegations and conclusively establish a defense as a matter of law.[4]

To answer this question, the court turns to the well-established principles of contract interpretation. Under New York law, "[t]he fundamental rule of contract interpretation is that agreements are construed in accord with the parties' intent . . . and '[t]he best evidence of what parties to a written agreement intend is what they say in their writing'" (*Riverside S. Planning Corp. v CRP/Extell Riverside L.P.*, 60 AD3d 61, 66 [1st Dept 2008], *affd* 13 NY3d 398 [2009]). Indeed, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Greenfield v Philles Records, Inc.*, 98 NY2d 562, 569 [2002]). These well-settled principles require courts to "give full meaning and effect to [the agreement's] material provisions" (*Excess Ins. Co. Ltd. v Factory Mut. Ins.*, 3 NY3d 577, 582 [2004]). And to accomplish this goal, courts must "accord the words of the contract their 'fair and reasonable meaning'" (*Duane Reade, Inc. v Cardtronics, LP*, 54 AD3d 137, 140 [1st Dept 2008], quoting *Heller v Pope*, 250 NY 132, 135 [1928]).

Here, AGP's claim largely centers around the Right of First Refusal in the Placement Agreement. Yet the key document to interpret for resolution of this motion is the Limited Waiver. As set forth in the Limited Waiver, AGP agreed to "a limited waiver of [its] right of first refusal provided for in the [Placement Agreement]," but that waiver only extended to Allarity's "pursuit of an at-the-

---

[4] Even if the Complaint contains well-pled allegations in support of its claim, the law is clear that dismissal could still be appropriate under CPLR 3211(a)(1) if those allegations are "flatly rejected by the documentary evidence" (*Basis Yield Alpha Fund*, 115 AD3d at 135). Thus, contrary to AGP's insinuation (*see* Opp at 4-5), the sufficiency of AGP's pleadings has no bearing on the court's CPLR 3211(a)(1) analysis.

**653636/2024 A.G.P./ALLIANCE GLOBAL PARTNERS, LLC vs. ALLARITY THERAPEUTICS, INC.**     **Page 5 of 8**
**Motion No. 001**

market offering (an 'ATM')" (Letter Waiver at 1). The term to focus on in this provision, for purposes of resolving this motion, is "pursuit."

Although the Letter Waiver does not define "pursuit," Merriam-Webster Dictionary defines the term as the "act of pursuing," which, in turn, means, in pertinent part, "to find or employ measures to obtain or accomplish," "to proceed along," "to engage in," or "to follow up or proceed with" (*see* Merriam-Webster Dictionary, pursuit [https://www.merriam-webster.com/dictionary/pursuit]; Merriam-Webster Dictionary, pursue [https://www.merriam-webster.com/dictionary/pursuing]; *see generally Bianco v Bianco*, 36 AD3d 490, 491 [1st Dept 2007] ["it is common practice for courts to refer to the dictionary in determining plain meaning"]). Black's Law Dictionary sets forth a similar description, defining the term "pursue"[5] as "[t]o follow persistently in order to seize or obtain," "[t]o try persistently to gain or attain," "[t]o continue trying to find out about," or "[t]o follow or proceed along with some particular end or object" (Black's Law Dictionary [12th ed 2024], pursue). And the dictionary source relied upon by both AGP and Allarity—the Oxford English Dictionary—is also in accord with these definitions (*see* NYSCEF # 33 [defining the term as "[t]he action of continuing or proceeding with something already begun," "the action of pursuing or following up a matter, issue," "[t]he observance or carrying out of a plan, design, order," "the action of proceeding or acting in accordance with a plan, method," "[t]he action or an act of seeking or striving to obtain, attain, or accomplish some objective," [t]he objective pursued," or "[t]he action of participating or engaging in an activity or action"]).

A review of each of these resources establishes an overarching definition of term "pursuit" that broadly captures those circumstances in which someone or something seeks out, takes steps to accomplish, or proceeds in furtherance of, a particular plan, end, goal, or objective. Consequently, the only interpretation supported by the Limited Waiver's otherwise plain and unambiguous language is as follows: AGP waived its Right of First Refusal for any ATM offering that Allarity sought out or took steps to achieve on or before the Limited Waiver's expiration date of February 29, 2024. Any other interpretation would render meaningless the term "pursuit" (*see Beal Sav. Bank v Sommer*, 8 NY3d 318, 324 [2007] [explaining that a reading of the contract "should not render any portion meaningless"]).

To avoid this outcome, AGP contends that the term "pursuit" is essentially synonymous with the term "effectuate," meaning that the Limited Waiver necessarily only applies to those circumstances where an ATM offering is consummated, not merely when Allarity "seeks out" such an ATM offering (*see* Opp at 6-7). This contention is unpersuasive. Notably, the term effectuate is commonly defined as "[t]o cause or bring about (something)" or "to put (something) into effect

---

[5] Black's Law Dictionary only offers a single definition for the term "pursuit" that is not applicable here (*see* Black's Law Dictionary [12th ed 2024], pursuit ["[a]n occupation or pastime" or "[t]he act of chasing to overtake or apprehend"]).

**653636/2024 A.G.P./ALLIANCE GLOBAL PARTNERS, LLC vs. ALLARITY THERAPEUTICS, INC.** **Page 6 of 8**
**Motion No. 001**

or operation" (*see* Merriam-Webster Dictionary, effectuate [https://www.merriam-webster.com/dictionary/effectuate]). This implies far more definitive action on a plan, goal, or objective than anything explicitly or implicitly suggested by the definitions of "pursuit" or "pursue" (including those definitions cited by AGP). As a result, any adoption of AGP's proffered definition of the term "pursuit" would be tantamount to an improper rewriting of the scope of the Limited Waiver (*see Greenfield*, 98 NY2d at 569-570 ["if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity"]).

With this plain meaning of the phrase "pursuit of an at-the-market offering" in mind, there is no basis to conclude that Allarity was required to offer AGP an opportunity to exercise the Right of First Refusal in connection with the Ascendiant ATM. To recap, upon signing the Term Sheet, Allarity had agreed to "principal terms" with Ascendiant for an ATM offering of Allarity common stock that would eventually become the Ascendiant ATM (*see* Term Sheet at 1). Chief among those terms was a detailed accounting of various customary aspects of an ATM offering, such as provisions related to the filing registration statements, the filing of incremental sales notices, and terms for delivering and selling Allarity's shares (*id.* at 1-2). The Term Sheet further contemplated that the completion of "final due diligence," account documentation, and regulatory clearances prior to the official offering of securities prior to the filing of the prospectus supplement (*id.* at 1).

Hence, even if it did not "constitute a binding obligation" between the parties, the Term Sheet plainly reflected a clear furtherance by Allarity of its ATM offering objective so as to constitute a "pursuit" under the Limited Waiver. And because the Term Sheet was signed on February 23, 2024, the Ascendiant ATM falls squarely within the Limited Waiver's waiver period because, by that point, it was being actively pursued by Allarity. The Term Sheet therefore utterly refutes AGP's contention that Allarity failed to honor the Right of Refusal and conclusively establishes a defense as a matter of law (*see, e.g. Arena Vantage SPV, LLC v Coventure-Vantage Credit Opportunities GP*, 81 Misc3d 1236[A], at *4 [Sup Ct, NY County, 2024] [dismissing claim where, although plaintiff alleged a breach of a loan agreement based on a purported failure to take action relating to certain borrower defaults, defendant submitted documentary evidence establishing that the alleged defaults had been waived, such that defendant's conduct could not be considered a breach]).

In sum, dismissal of the Complaint under CPLR 3211(a)(1) is warranted, and Allarity's motion to dismiss the Complaint is granted. The court has considered AGP's remaining arguments in opposition and finds them unavailing.[6]

---

[6] In light of this conclusion, the court does not address Allarity's alternative argument advanced in its motion papers (*see* MOL at 5-7; Reply at 8-9).

**653636/2024 A.G.P./ALLIANCE GLOBAL PARTNERS, LLC vs. ALLARITY THERAPEUTICS, INC.**          **Page 7 of 8**
**Motion No. 001**

## Conclusion

For the foregoing reasons, it is hereby

ORDERED that defendant's motion to dismiss (MS001) is granted in its entirety and the complaint is dismissed with prejudice; and it is further

ORDERED that the Clerk of the Court shall enter judgment accordingly; and it is further

ORDERED that counsel for defendant shall serve a copy of this order, together with notice of entry, upon plaintiff and the Clerk of the Court within 10 days of this order.

This constitutes the Decision and Order of the court.

| 03/03/2025 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | MARGARET A. CHAN, J.S.C. | | |
| CHECK ONE: | **X** CASE DISPOSED | | NON-FINAL DISPOSITION | | |
| | **X** GRANTED | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**653636/2024 A.G.P./ALLIANCE GLOBAL PARTNERS, LLC vs. ALLARITY THERAPEUTICS, INC.**     **Page 8 of 8**
**Motion No. 001**

8 of 8

[* 8]