■ D.B. Zwirn Special Opportunities Fund, L.P., Respondent, v SCC Acquisitions, Inc., Appellant, et al., Defendants. [902 NYS2d 93]—

Order, Supreme Court, New York County (Michael D. Stallman, J.), entered September 22, 2009, which, in an action on two guarantees, granted plaintiff's motion for summary judgment as to liability and denied defendant's cross motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, plaintiff's motion denied, and defendant's cross motion granted. The Clerk is directed to enter judgment dismissing the complaint.

Plaintiff is a large New York based hedge fund that invests its money in high risk transactions, including high risk real estate transactions and loans. Defendant and its affiliates, SunCal Copper Canyon, LLC (Copper Canyon) and SunCal-Southwind JV, LLC (Southwind), are residential and commercial real estate developers that engage in high risk transactions.

In July 2005, plaintiff loaned Copper Canyon $35 million for a project in Nevada. About a year later, in May 2006, plaintiff made a $75 million revolving loan to Southwind for three projects in California. In 2007, both Copper Canyon and Southwind defaulted on their loans, prompting plaintiff to hold two nonjudicial foreclosure sales at which it bid on and obtained title to the Nevada and California properties. Plaintiff's bids were significantly lower than the outstanding debt on the properties, resulting in substantial deficiencies.

In May 2008, plaintiff commenced this action against defendant to recover the Southwind and Copper Canyon deficiencies plus interest, costs, and attorneys' fees. The action is based upon defendant having executed and delivered to plaintiff a separate carve-out guaranty in connection with each loan, in which defendant becomes liable for all or part of its affiliates' payment obligations upon the occurrence of certain events. At issue is whether defendant is liable under section 1 (b) (ii) (e) of these carve-out guarantees, which states, in pertinent part, that defendant is responsible for "the outstanding principal amount of the Loan[s], and all other amounts due and owing under the Loan Documents, together with reasonable attorneys' fees, court costs and costs of the appeal" if the affiliate(s) "admit[s], in writing, its insolvency or inability to pay its debts as they become due." Plaintiff contends that certain financial reports that Southwind and Copper Canyon provided to it constituted such admissions.

The Copper Canyon documents were provided to plaintiff in accordance with the terms of the loan. They consisted of a balance sheet, an income statement, a project cost summary, a project cost detail and a general ledger for July 2007. Plaintiff claims that the balance sheet constituted a written admission because it listed Copper Canyon's cash and cash equivalents as $3,706, current assets as $191,001, and liabilities as $36,781,734.

The Southwind financial documents were provided to plaintiff in connection with Southwind's request to restructure its loan. The documents consisted of net operating income (NOI) calculations, a financial summary based upon its current capital structure, and a financial summary based upon a proposed new capital structure. The current financial summary listed Southwind's net sales proceeds as $131,436,223, total costs as $142,267,080, and current loss on the project as $17,684,533. The NOI calculations listed the purchase price of the California properties as approximately $73 million and their current value as approximately $38 million.

Plaintiff claims the only conclusion that could be drawn from these financial documents is that the affiliates were insolvent and unable to pay their debts as they become due. The motion court agreed, reasoning that when financial statements show a borrower's liabilities exceed its assets, the borrower is effectively stating that it is insolvent.

It is well settled that a contractual provision that is "clear . . . on its face must be enforced according to the plain meaning of its terms" (*Duane Reade, Inc. v Cardtronics, LP*, 54 AD3d 137, 140 [2008]). Section 1 (b) (ii) (e) is clear and requires an affiliate to actually admit in writing that it is insolvent or unable to pay its debts as they became due. This requirement was not satisfied merely because plaintiff, following its review of the data contained in the affiliates' financial reports, concluded the affiliates were unable to make their loan payments (*see Magten Asset Mgt. Corp. v Bank of N.Y.*, 15 Misc 3d 1132[A], 2007 NY Slip Op 50951[U], *4-6 [Sup Ct, NY County, May 8, 2007, Fried, J.]).

Although the affiliates' financial reports show they were experiencing financial difficulty, the statements contained in the reports were not written admissions as contemplated by section 1 (b) (ii) (e) because they did not contain the express statement required by the contract. Notably, two months after plaintiff received the reports, plaintiff's attorney twice sent correspondence to the attorney for the affiliates and defendant attempting to elicit written admissions of insolvency. Both the e-mail and the letter posed the same questions: "(i) [A]re the South-

wind and Copper Canyon borrowers out of money, and (ii) will those borrowers make the loan payments that are past due and coming due this month?" It is abundantly clear that these questions were designed to extract written admissions from the affiliates. Thus, it is reasonable to conclude that plaintiff never believed that the financial reports it had already received contained the requisite written admissions, and that it needed further statements from the affiliates.

Plaintiff now contends that its questions were merely a request for clarification and it "desire[d] to give the [b]orrowers the opportunity to present all evidence available to them to avoid triggering liability under the Guarantees." This argument is inherently inconsistent with plaintiff's claim that the affiliates' financial documents contained written admissions triggering defendant's liability. If plaintiff truly believed the affiliates had made the requisite written admissions, then it would not have sent the correspondence described above. Rather, it would have promptly sought to hold defendant liable for the outstanding debt by invoking section 1 (b) (ii) (e) of the guarantees.

Likewise, the fact that both affiliates defaulted on their loans is not dispositive because section 1 (b) (ii) (e) is solely concerned with whether a written admission was made, not whether an affiliate had financial problems or failed to make payments when due (see *Magten*, 2007 NY Slip Op 50951[U], *5; *Atel Fin. Corp. v Quaker Coal Co.*, 132 F Supp 2d 1233, 1238 [ND Cal 2001], *affd* 321 F3d 924 [9th Cir 2003]). If the parties had intended to make defendant liable upon being in financial distress, language stating the same could have easily been included in the guarantees. Here, the guarantees did not include such language and the parties signed carve-out guarantees, rather than general guarantees.

Defendant's affirmative defense of fraudulent inducement has been rendered moot since the complaint is being dismissed. Concur—Friedman, J.P., Sweeny, DeGrasse, Richter and Manzanet-Daniels, JJ. **[Prior Case History: 2009 NY Slip Op 32270(U).]**