Hatkoff v Tussauds Group LLC (2020 NY Slip Op 05137)





Hatkoff v Tussauds Group LLC


2020 NY Slip Op 05137


Decided on September 29, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 29, 2020

Index No. 653822/2018 Appeal No. 11888 Case No. 2019-03298, 2019-4923 

Before: Acosta, P.J., Webber, Moulton, Shulman, JJ. 


[*1]Craig M. Hatkoff, et al., Plaintiffs-Appellants,
v
The Tussauds Group LLC , Formerly Known as The Tussauds Group Ltd., et al., Defendants-Respondents.


Kaplan Landau PLLC, New York (Mark Landau of counsel), for appellants.
Davis Wright Tremaine LLP, New York (John M. Magliery of counsel), for respondents.



Judgment, Supreme Court, New York County (Andrea Maisley, J.), entered June 26, 2019, granting defendants' CPLR 3211(a) motion to dismiss the complaint, unanimously affirmed, without costs. Appeal from order, same court and Justice, entered May 28, 2019, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Plaintiff Valentine Wildove & Co., Inc. (VWC) is a consultant in real estate and exhibition design and development. Plaintiff Craig M. Hatkoff is the principal of VWC. Plaintiff Turtle Pond Publications, LLC (Turtle) is a designated payee of certain monies to be paid to Hatkoff. Defendant Merlin Entertainment PLC owns The Tussauds Group (Tussauds).
In 1993, defendant Tussauds sought to establish a wax museum in the Times Square area. By a written agreement dated October 15, 1993 (the Agreement), Tussauds retained VWC's predecessor, Victor Capital Group (VCG) to provide exhibition development services for the Times Square museum. The Agreement described the services and sets forth various forms of compensation to be paid to VCG. The Agreement also provided that it could be terminated if VCG no longer employed Hatkoff, or in the event Hatkoff died or became incapacitated.
The termination clause of the Agreement, paragraph IV(b) stated that:
"Tussauds may only terminate this Agreement "for cause" provided, however, that at any time from and after two years after the date hereof, Tussauds may terminate this Agreement with or without cause, and with or without Substantial Performance except that upon a termination pursuant to this provision Tussauds' obligation to pay VCG compensation hereunder shall survive with respect to such compensation, if any, earned pursuant to this agreement as of the date of such termination but not yet payable."
The Agreement also barred third-party beneficiaries and stated that it could not be modified, except by a writing signed by both parties.
In 1995, the parties discussed possible modifications to the Agreement. This culminated in a letter from Tussauds to VCG, in June 1995, in which Tussauds set out agreed points that should be put into a "formal document". That letter was never signed by VCG and the parties apparently agree that it did not constitute a valid amendment to the Agreement. The parties do agree, however, that as set forth below, paragraph 4 of the 1995 Letter was incorporated into the Agreement:
"Craig Hatkoff will be invited to become either a Non Executive Director or a Consultant to the entity formed by The Tussauds Group in New York to operate the exhibition for a fee of $25,000 (twenty five thousand dollars) per annum."
In July 1996, by Letter, the parties entered into a formal modification of the Agreement. There is no dispute that the 1996 Letter, which was signed by both parties, is a valid modification. In addition to changes in the compensation provisions of the Agreement, the 1996 Letter contains the following two clauses.
Paragraph 4 of the 1996 Letter provides:
"The parties acknowledge . . . that 'Substantial Performance' has been achieved and VCG may be terminated solely for cause as provided in paragraph IV of the [1993] Agreement."
Paragraph 5 of the 1996 Letter provides:
"Except as provided herein, the Agreement remains in full force and effect. The [1995] Letter is superseded in its entirety except that paragraph 4 of the [1996] Letter relating to Craig Hatkoff becoming a non-executive director or consultant and related compensation will remain in effect."
It is undisputed that Tussauds invited Hatkoff to become a consultant and paid him $25,000 a year for the next 18 years. In 2002, at Hatkoff's request, Tussauds made the payments to Hatkoff's designee, plaintiff Turtle Pond.
In February 2018, Tussauds purported to terminate Hatkoff's position and compensation. Plaintiffs thereafter brought the instant action for breach of contract based on defendants' termination of Hatkoff without cause.
Defendants moved to dismiss the complaint under CPLR 3211(a)(1) and (7). Defendants argued that the sole written contract was between Tussauds and VWC/VCG and not with Hatkoff. With regard to the termination of Hatkoff, defendants argued that Tussauds' agreement with him was separate; it provided only that he would work on the exhibition and receive $25,000 per year for that service. According to defendants, because Tussauds' agreement with Hatkoff was a separate contract from its Agreement with VWC, Hatkoff's employment was not subject to paragraph IV(b) of the Agreement, or any termination for cause provision.
Plaintiffs argued that the intent of the inclusion of the hiring of Hatkoff was part of an overarching agreement among Tussauds, VWC, and Hatkoff. As such, plaintiffs argued, all of the terms of the Agreement apply to Hatkoff's work for defendants, including the termination for cause provision.
The motion court granted defendants' motion and dismissed the action. The court did not rely on the arguments raised by the parties, which focused on whether paragraph IV(b) of the Agreement, and in particular the termination for cause provision of that paragraph, applied to the Hatkoff consultancy. The court held that, even if paragraph IV(b) did apply to the Hatkoff consultancy, the 1996 Letter stated: "VCG may be terminated solely for cause as provided in paragraph IV of the [1993] Agreement," which the court read to mean that the entirety of paragraph IV(b) was incorporated.
The court further reasoned that because the termination of Hatkoff took place 18 years later, Tussauds was outside the two-year period and thus could terminate Hatkoff, whether his consultancy was separate from or part of the Agreement, without cause. 
While the motion court based its decision on a theory not advanced by the parties, given that the theory was one based solely on the face of the written agreements, any prejudice to plaintiffs was alleviated by the opportunity to address the argument on appeal (see Chateau D'If Corp. v City of New York, 219 AD2d 205, 209 [1st Dept 1996], lv denied 88 NY2d 811 [1996]). In any event, the contractual terms upon which the motion court based its determination are subject to competing, reasonable interpretations, and therefore dismissal was not warranted on that basis (see Duane Reade, Inc. v Cardtronics, LP, 54 AD3d 137, 144 [1st Dept 2008]).
However, defendants are correct that, even reading the various documents together, the termination for cause provisions of the 1993 Agreement do not apply to the individual plaintiff's consultancy. The Agreement expressly bars third-party beneficiaries, and the clause in question speaks only to the performance and termination of the corporate plaintiff, VWC.
Plaintiffs' own argument and affidavits contradict their unpleaded assertion that there was a separate oral contract.
We have considered plaintiffs' other arguments and find them unpersuasive. 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 29, 2020