## JLJ Capital LLC v Churchill Real Estate Holdings LLC

2025 NY Slip Op 30056(U)

January 7, 2025

Supreme Court, New York County

Docket Number: Index No. 656966/2022

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

-------------------------------------------------------------------------X

| | |
|---|---|
| JLJ CAPITAL LLC, | **INDEX NO.** 656966/2022 |
| Plaintiff, | **MOTION DATE** 05/21/2024 |
| - v - | **MOTION SEQ. NO.** 003 |
| CHURCHILL REAL ESTATE HOLDINGS LLC, | |
| Defendant. | **DECISION + ORDER ON MOTION** |

-------------------------------------------------------------------------X

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (MS003) 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176
were read on this motion to/for                                    JUDGMENT - SUMMARY                          .

Plaintiff JLJ Capital LLC (JLJ) brings this action against defendant Churchill Real Estate Holdings LLC (Churchill) to enforce its purported inspection rights under the parties' loan participation agreement (NYSCEF # 2 – compl or Complaint). Presently before the court is JLJ's motion, pursuant to CPLR 3212, for an order, *inter alia*, granting summary judgment in its favor on its first cause of action for breach of contract and its second cause of action for attorneys' fees (NYSCEF # 115). Churchill opposes the motion.

For the following reasons, JLJ's motion is granted.

## Background

The following facts are drawn from the parties' submissions and are undisputed unless otherwise noted.

On June 7, 2018, Churchill, as lender, loaned the principal sum of $20,000,000 to non-party 257-263 W34th Mezz LLC pursuant to a certain mezzanine promissory note and mezzanine loan agreement (NYSCEF # 142 – pltf 19-a ¶ 1; NYSCEF # 119 – the Loan). The next year, on July 11, 2019, Churchill agreed to sell and transfer, and JLJ, as participant, agreed to purchase and assume, an 20% interest in the Loan pursuant to a Participation Agreement (pltf 19-a ¶¶ 204; NYSCEF # 172 – deft 19-a ¶ 20; NYSCEF # 120 – Agreement at Recitals & § 1.2). As is relevant here, Section 4.4 of the Agreement obligated Churchill to "mark its books to reflect [JLJ's] Percentage and maintain books and records

656966/2022 JLJ CAPITAL LLC vs. CHURCHILL REAL ESTATE HOLDINGS LLC
Motion No. 003

Page 1 of 10

relating to the Loan, which shall be made available to [JLJ] at reasonable times, upon reasonable notice, for the purpose of inspection, examination, audit and copying by [JLJ], at [JLJ's] sole cost and expense" (pltf 19-a ¶ 5; deft 19-a ¶ 21; Agreement § 4.4[i]).

On August 19, 2021, approximately two years after entering into the Agreement, Citrin Cooperman LLP (Citrin Cooperman), on behalf of JLJ, notified Churchill that it had been engaged to perform limited "agreed upon procedures on JLP's accounting and financial statement reporting," and it had selected "JLJ's financing agreement with Churchill [] regarding the [Loan] as part of [its] sample" (NYSCEF # 121 – Aug. 19, 2021 Ltr). To facilitate this review, Citrin Cooperman requested the following categories of documents from Churchill: (1) "[a]ll underlying loan agreements with the borrowers for th[e] [two specified] properties (including senior, mezzanine, and any other loans)"; (2) "[l]edgers or schedules from inception of the underlying loans to present"; (3) "[a]ny applicable year-end financial statements, general ledgers, or trial balances related to the [L]oan," (4) any loan amortization schedules, and (5) copies of financial statements and any other documents provided by the borrower to Churchill (pltf 19-a ¶ 6; Aug. 19, 2021 Ltr at CH_0000001-002).

On February 16, 2022, Churchill responded to JLJ's request by circulating a "closing binder for senior loan plus settlement statement" (*see* 19-a ¶ 7; NYSCEF # 122 at CH_0001449). This transmission contained 38 documents, including a document entitled "34th Title Policy" issued in connection with a senior note refinancing of $42,168,066.35 (pltf 19-a ¶ 7; deft 19-a ¶¶ 7, 31). The documentation provided by Churchill also listed out various disbursements in line-item format, including disbursements of (1) $3,041,139.63 with a description of "Churchill Real Estate," (2) $170,688.36 with a description of "Remaining Hard Costs to NY Directors," and (3) $1,666,918.35 with a description of "Hard Costs Holdback to NY Developers" (pltf 19-a ¶ 8; deft 19-a ¶ 8; NYSCEF # 122 at CH_0000904-905). A few weeks later, on March 3, 2022, Churchill provided additional information in response to JLJ's August 19, 2021, letter (deft 19-a ¶ 32; NYSCEF # 165 at JLJ_00001267).

In reply, JLJ, again through Citrin Cooperman, circulated a letter, dated April 7, 2022, providing comments, highlighting open requests, and requesting additional information from Churchill (pltf 19 ¶ 9; deft 19-a ¶ 33; NYSCEF # 124 – April 7, 2022 Ltr). This letter included a request for the following documents: (i) schedules showing loan funding dates/amounts for all participants in the Loan; (ii) schedules showing loan repayment dates/amounts for all participants in the Loan; (iii) a schedule regarding interest accruals; (iv) adjustments to the principal or interest balances of borrowers or participants, including documentation and further detail on specific disbursements in the document titled "Closing Binder (2095_001)"; (v) all Churchill general ledgers for the fiscal year of 2019 through the present; (vi) financial statements, a letter of credit, or financial representations

**656966/2022 JLJ CAPITAL LLC vs. CHURCHILL REAL ESTATE HOLDINGS LLC**  **Page 2 of 10**
**Motion No. 003**

[* 2]

made upon application for the Loan; (vii) bank statements for the project from inception to present showing all participant funding, usage of participant funding, and repayments/buyouts of participants; and (viii) a closing statement for the $42,168,066.35 refinancing of senior note that enumerates how such proceeds were netted out against the total Loan (pltf 19-a ¶ 9; deft 19-a ¶ 34; April 7, 2022 Ltr at CH_0000003-005).

The parameters of the parties' dispute began crystalizing in April 2022, when Churchill, by email from counsel dated April 13, 2022, expressed its view that the documents requested in the August 19, 2021, and April 7, 2022, letters "expand[ed] beyond those limited disclosure rights" in Section 4.4 of the Agreement (*see* 19-a ¶ 10; deft 19-a ¶ 36; NYSCEF # 125 at CH_0000122). That same day, JLJ explained that "irrespective of what initially triggered [its] books and records request, [JLJ] now ha[d] concerns regarding the veracity of the representations made by Churchill [] in advance of [JLJ's] participation in the transaction" (NYSCEF # 125 at CH_0000121). JLJ further indicated that Section 4.4 entitled JLJ to "books and records related to the [L]oan, which would naturally include the general ledger, bank statements, and other documents outlined in Citrin Cooperman's letter" (*id.*). Later, on April 18, 2022, Churchill responded that (1) JLJ's "concerns regarding the veracity of representations is misplaced [sic]," (2) JLJ "had access to various due diligence items" prior to entering into the Agreement, and (3) JLJ had an "affirmative duty to exercise ordinary diligence to ascertain the veracity of the representations of which it now seeks to complain" (*id.*). Churchill also noted that Section 4.4 "merely provide[d] JLJ" with "reasonable access to books and records" regarding the Loan, but not "the audit rights outlined in the Citrin Cooperman letter" or "the right to access investor lists and [Churchill's] trade secrets" (*see* pltf 19-a ¶ 10; NYSCEF # 122 at CH_0000121).

On May 2, 2022, JLJ, now through counsel, served another demand on Churchill for (a) general ledgers from June 7, 2018 to the present; (b) bank statements from June 7, 2018 to the present; (c) financial statements as of the end of 2018 to the present; (d) participation agreements of the other participants in the Loan from June 7, 2018 to the present; and (e) documents sufficient to show the corporate and financial relationship between Churchill and any of its affiliates to which funds related to the Loan were transferred (pltf 19-a ¶ 11; deft 19-a ¶ 37; NYSCEF # 126 – May 2, 2022, Ltr at CH_000136-138). In that same correspondence, JLJ represented that it would perform any audit subject to a confidentiality agreement and was willing to accept documents with redactions applied to the names and other identify information of Churchill's other investors and participants (pltf 19-a ¶ 12; deft 19-a ¶ 38; May 2, 2022 Ltr at CH_0000137).

On May 9, 2022, Churchill provided additional documents to JLJ, including a Loan Statement of Account that it contends is "maintained and relating to the Loan" under Section 4.4 of the Agreement (pltf 19-a ¶ 12; deft 19-a ¶¶ 41-42;

**656966/2022 JLJ CAPITAL LLC vs. CHURCHILL REAL ESTATE HOLDINGS LLC**     **Page 3 of 10**
**Motion No. 003**

3 of 10

NYSCEF # 127 – May 9, 2022 Ltr; NYSCEF # 128 - SOA).[1] In its accompanying letter, Churchill reiterated its position regarding Section 4.4 of the Agreement and explained that it did not maintain a general ledger for the Loan or bank statements for the Loan (*see* pltf 19-a ¶ 15; deft 19-a ¶ 15; May 9, 2022 Ltr at CH_0000382-384). JLJ responded on May 20, 2022, to identify deficiencies in Churchill's May 9 letter and again reiterated its books and records demand (*see* NYSCEF # 129 at CH_0000243-245). In a letter, dated May 26, 2022, Churchill explained that it would not be producing any additional documents given the information that had already been provided to JLJ (*see* 19-a ¶ 16; NYSCEF # 130 at CH_0000167).

Based on Churchill's purported refusal to produce any additional information, JLJ commenced this litigation on June 24, 2022 (NYSCEF #s 1 – compl). JLJ contends that Churchill has refused to grant JLJ access to much of the information initially requested in its August 2021, March 2022, and May 2022 letters, including (i) general ledger account activity from June 7, 2018 to present; (ii) bank statements reflecting Loan transactions from June 7, 2018 to present; (iii) financial year-end statements for 2018 to the present; (iv) Churchill's Loan participation schedules; (v) all data used in preparation of and/or evidencing the transactions contained in the Statement of Account; (vi) participation agreements for the Loan from June 7, 2018 to the present (redacting any identifying information); (vii) accounting records related to the Loan from June 7, 2018 to the present; (viii) documents sufficient to show the corporate and financial relationships between Churchill and any of its affiliates to which funds related to the Loan were transferred; and (ix) documentation concerning certain transactions, including disbursements in the amounts of $3,041,139.63 and $170,688.36, respectively (the Requested Documents) (*see* pltf 19-a ¶ 17; deft 19-a ¶ 46; NYSCEF # 117 – Lewis aff ¶ 16). For its part, Churchill maintains that it does not keep separate ledgers, bank accounts, or financial statements specific to the Loan, and that much of the Requested Documents encompass corporate-level information that does not fall within the purview of Section 4.4 of the Agreement (*see* deft 19-a ¶¶ 47-55).[2]

As the above suggests, the parties' dispute concerning JLJ's entitlement to the Requested Documents centers around the scope of the Churchill's obligations to JLJ under Section 4.4 (*see* pltf 19-a ¶¶ 6-18; deft 19-a ¶¶ 24-104). JLJ contends that Section 4.4 gives JLJ a right to audit, inspect, and examine/review Churchill's records related to the Loan, which would include all financial information and

---

[1] Although Churchill states that the SOA identifies interest payments and balances related to the Loan, JLJ notes that the document was manually prepared and that a review of the underlying information used to create this document is needed to evaluate the veracity of Churchill's position (deft 19-a ¶ 42; NYSECEF # 176 ¶ 42; *see also* NYSCEF # 133 – Maheshwari tr 37:17-39:3).

[2] Nonetheless, Churchill has acknowledged, through testimony, that information about the Loan would be reflected in its corporate-level records, while monthly Loan statements, as well as statements of account, can be generated in Excel by Churchill (*see* pltf 19-a ¶ 18; NYSCEF # 154 – Maheshwari tr 16:3, 20:21-21:19, 37:6-40:9, 38:14-21, 49:13-52:25, 54:7-14, 114:3-10, 159:12-161:25, 178:21-179:8).

**656966/2022 JLJ CAPITAL LLC vs. CHURCHILL REAL ESTATE HOLDINGS LLC**      **Page 4 of 10**
**Motion No. 003**

accounting records that evidence transactions relating to the Loan or otherwise contain information about the Loan (*see* Lewis aff ¶¶ 17-21). JLJ supports this position through its experts' report (the Womack Report). The Womack Report opines that (1) Section 4.4 requires Churchill to mark its books to reflect the participant's percentage, maintain books and records relating to the Loan, and make those books and records available to JLJ for purpose of audit, inspection, and examination and copying, and (2) to facilitate such an audit, inspection, and examination, Churchill must provide all financial books and records about the Loan, including internal and external source documents needed to verify transactions and financial information (*see* NYSCEF # 141 – WM Report ¶¶ 2, 25-28, 38-48).

Churchill counters that Section 4.4 only entitles JLJ to books and records that are maintained by Churchill and relate to the Loan and does not grant JLJ access to corporate-level documents in any capacity (*see* deft 19-a ¶ 62; Maheshwari aff ¶¶ 17-18, 40, 68). Further, Churchill continues, although Section 4.4 does allow JLJ to inspect, examine, audit, or copy the documents that are maintained by Churchill and specifically relate to the Loan, it does not give JLJ the right to conduct an audit of Churchill's business (see deft 19-a ¶¶ 62-63; Maheshwari aff ¶¶ 68-69, 75). Churchill contends that its interpretation of Section 4.4 is consistent with the interpretation of similarly worded provisions included in other participation agreements between JLJ and Churchill, as well as the parties' course of conduct (*see* deft 19-a ¶¶ 68-85; Maheshwari aff ¶¶ 17-20, 27, 33-34, 69, 75). Churchill also points to its rebuttal expert, Jeffrey M. Katz, CPA/ABV, CFF, CFE, who opines that, based on his experience with books and records provisions, Section 4.4 limits the books and records to which JLJ is entitled to only those maintained by Churchill relating to the Loan (*see* NYSCEF # 153 – Katz Report ¶¶ 22-33).

## Legal Standard

A party moving for summary judgment must make a prima facie showing that it is entitled to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Once that showing is made, the burden shifts to the party or parties opposing the motion to produce evidentiary proof, in admissible form, sufficient to establish the existence of material issues of fact requiring a trial of the action (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). On a motion for summary judgment, "facts must be viewed 'in the light most favorable to the non-moving party'" (*see Vega v Restani Constr. Corp*, 18 NY3d 499, 503 [2012]). Although summary judgment is "considered a drastic remedy," "when there is no genuine issue to be resolved at trial, the case should be summarily decided" (*Andre v. Pomeroy*, 35 NY2d 361, 364 [1974]).

## Discussion

In this action, JLJ asserts a claim for breach of Section 4.4 of the Agreement against Churchill and seeks specific performance directing Churchill to permit

**656966/2022 JLJ CAPITAL LLC vs. CHURCHILL REAL ESTATE HOLDINGS LLC**
**Motion No. 003**

**Page 5 of 10**

examination of books and records related to the Loan (compl ¶¶ 42-53).[3] JLJ now moves for summary judgment. To prevail on its claim on this motion, JLJ must make a prima facie showing of "the existence of a contract, [its] performance thereunder, [Churchill's] breach thereof, and resulting damages" (*Lebedev v Blavatnik*, 193 AD3d 175, 182-183 [1st Dept 2021], quoting *Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010]). Whether JLJ can make this showing here turns on the scope of Section 4.4 of the Agreement, which must be discerned through the familiar principles of contract interpretation in New York.

Under New York law, "a contract is to be construed in accordance with the parties' intent" (*MHR Capital Partners LP v Presstek, Inc.*, 12 NY3d 640, 645 [2009]). And the "best evidence of what parties to a written agreement intend is what they say in their writing" (*Slamow v Del Col*, 79 NY2d 1016, 1018 [1992]). Accordingly, "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (*W.W.W. Assoc., Inc. v Giancontieri*, 77 NY2d 157, 162 [1990]). Furthermore, "[t]he agreement should be 'read as a whole, and every part will be interpreted with reference to the whole'" (*Global Reins. Corp. of Am. v Century Indem. Co.*, 30 NY3d 508, 518 [2017]).

These well-settled principles of contract interpretation require courts to "give full meaning and effect [the agreement's] material provisions" (*Excess Ins. Co. Ltd. v Factory Mut. Ins.*, 3 NY3d 577, 582 [2004]; *accord Beal Sav. Bank v Sommer*, 8 NY3d 318, 324 [2007] [explaining that a reading of the contract "should not render any portion meaningless"]). To accomplish this goal, courts must "accord the words of the contract their 'fair and reasonable meaning'" (*Duane Reade, Inc. v Cardtronics, LP*, 54 AD3d 137, 140 [1st Dept 2008], quoting *Heller v Pope*, 250 NY 132, 135 [1928]). Put differently, the court's "aim is a practical interpretation of the expressions of the parties to the end that there be a 'realization of [their] reasonable expectations'" (*Brown Bros. Elec. Contrs., Inc. v Beam Const. Corp.*, 41 NY2d 397, 400 [1977], quoting 1 Corbin, Contracts § 1; *accord Matter of Cromwell Towers Redevelopment Co. v City of Yonkers*, 41 NY2d 1, 6 [1976] [observing that "due consideration must be given to the purpose of the parties in making the contract" and that "[a] fair and reasonable interpretation, consistent with that purpose, must guide the courts in enforcing the agreement"]).

Here, JLJ argues that Section 4.4 must be interpreted broadly to encompass not just documents created solely for the purpose of the Loan, but also financial records evidencing the Loan and its transactions (including the Requested Documents) (*see* NYSCEF # 116 – MOL at 12-17; NYSCEF # 173 – Reply at 2-12). Churchill counters that JLJ's proffered interpretation improperly expands the scope of Section 4.4 by requiring Churchill to maintain books and records sufficient to conduct a financial audit, rather than merely those documents maintained by Churchill regarding the Loan (*see* NYSCEF # 145 – Opp at 10-14). Plainly, at its

---

[3] JLJ also seeks attorneys' fees pursuant to Section 7.10 of the Agreement (*see* compl ¶¶ 54-56).

**656966/2022 JLJ CAPITAL LLC vs. CHURCHILL REAL ESTATE HOLDINGS LLC**
**Motion No. 003**

**Page 6 of 10**

6 of 10

[* 6]

core, this dispute ultimately centers around Section 4.4's use of the phrase "relating to" as a means to connect the terms "books and records" and "the Loan" (Agreement § 4.4[i]). And, as explained below, only JLJ offers an interpretation of this phrase that accords the words of Section 4.4 their full and reasonable meaning and aligns with the parties' reasonable expectations. Consequently, JLJ has plainly met its prima facie burden establishing summary judgment on this issue, and Churchill has failed to rebut that showing in response.

Although the phrase "relating to" is not defined in the Agreement, a review of pertinent resources, such as dictionaries, provides guidance (*see Mazzola v County of Suffolk*, 143 AD2d 734, 735 [2d Dept 1988] ["it is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract"]). Specifically, a consultation of these resources establishes that the phrase "relating to" means "[t]o have some connection to," to stand in relation to," or "[t]o establish a connection between" (Black's Law Dictionary [12th ed 2024], relate; *see also* Merriam-Webster Dictionary, related [https://www.merriam-webster.com/dictionary/related [defining "related" as "connected by reason of an established or discoverable relation"]; *Coregis Ins. Co. v Am. Health Found., Inc.*, 241 F3d 123, 128 [2d Cir 2001], quoting Webster's Third New International Dictionary 1916 [1986] [explaining that the term "relation"—which is "used esp[ecially] in the phrase 'in relation to'"—is "defined as a 'connection' to or a 'reference' to"]).

Notably, this is a definition that has been repeatedly interpreted to be broad in its scope. For instance, the United States Supreme Court observed in the context of its federal preemption analysis that "[t]he ordinary meaning of ["relating to"] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with'" (*see Morales v Trans World Airlines, Inc.*, 504 US 374, 383 [1992],). The New York Court of Appeals, in a similar context, characterized the phase as having "expansive import" (*see State of N.Y. ex rel. Grupp v DHL Express (USA), Inc.*, 19 NY3d 278, 283-284 [2012]). Finally, the First Department has construed arbitration clauses using the phrase "relating to" as "broad" (*see Matter of With You, Inc. v Astilean*, 98 AD3d 461, 462 [1st Dept 2012]).

Given this construction of the term "relating to," there is only one reasonable interpretation of Section 4.4 that accords with the plain meaning of the phrase, is sufficiently broad in scope, and, as a result, gives full effect to that provision's otherwise clear and unambiguous terms. That interpretation is as follows: Church shall maintain books and records that stand in some relation, have some connection, or otherwise refer to the Loan, and those types of books and records must be made available to JLJ for purposes of inspection, examination, audit, and copying. In other words, if a document, whether financial or otherwise, contains information about the Loan, it necessarily has some connection to or reference to the Loan und Section 4.4 regardless of where and how it is specifically maintained

**656966/2022 JLJ CAPITAL LLC vs. CHURCHILL REAL ESTATE HOLDINGS LLC**      **Page 7 of 10**
**Motion No. 003**

7 of 10

[* 7]

by Churchill. Accordingly, under the plain terms of the Agreement, the Requested Documents would be encompassed by Section 4.4. Such a conclusion is buttressed by the fact that many of the documents encompassed by the Requested Documents would contain information about the Loan, even if not specifically maintained specifically in connection with the Loan (*see e.g.* Maheshwari tr 16:3, 20:21-21:19, 37:6-40:9, 38:14-21, 49:13-52:25, 54:7-14, 114:3-10, 159:12-161:25, and 178:21-179:8).

The inclusion of the term "audit" further confirms the broad scope of Section 4.4. As defined in various resources, an audit is "[a] formal examination of an individual's or organization's accounting records, financial situation, or compliance with some other set of standards" or a "methodical examination and review" (Black's Law Dictionary [12th ed, 2024], audit; Merriam-Webster Dictionary, audit [https://www.merriam-webster.com/dictionary/audit]). And thus, when this term is construed within the context of Section 4.4, it is evident that the parties would have reasonably expected "books and records relating to the Loan" to include the standard financial documents that are encompassed by the Requested Documents (to the extent they contain information about the Loan). Indeed, these are the types of financial records are what would allow JLJ to engage in the contracted-for formal and/or methodical financial examination rights provided by Section 4.4. Any other interpretation would essentially render the term "audit" meaningless or redundant in light of JLJ's existing right to "inspect[]" and "examin[e]" the books and records already set forth in Section 4.4 (*see generally Petersen v Metropolitan Life Ins. Co.*, 81 AD3d 573, 573 [1st Dept 2011] [rejecting proposed interpretation of a section of an insurance policy that failed to give full meaning and effect to that section]).

This above-referenced interpretation of Section 4.4 does not, as Churchill argues, alter the scope of Section 4.4 so as to grant JLJ an unfettered right to conduct a financial audit of Churchill's business without limit (*see* Opp at 12-15). Rather, as the above makes clear, this interpretation retains the full scope and reach of Section 4.4 by only granting JLJ access to those books and records, wherever they would be found and maintained, reflecting information about the Loan. To accept any other interpretation, including the one advanced by Churchill in its opposition, would be to improperly narrow the scope of Section 4.4 by either adding or excising terms from that provision (*Tutor Perini Corp. v City of New York*, 225 AD3d 439, 439-440 [1st Dept 2024] [holding that courts should not "write into a contract conditions the parties did not include by adding or excising terms under the guise of construction"]).[4]

Having determined that JLJ met its prima facie burden that Section 4.4 encompasses the Requested Documents, and Churchill has failed to rebut that

---

[4] Given that Section 4.4 is unambiguous, the court will not—and in fact cannot—consult the extrinsic evidence submitted by the parties (*see W.W.W. Assoc.*, 77 NY2d at 162 ["Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing"]).

**656966/2022 JLJ CAPITAL LLC vs. CHURCHILL REAL ESTATE HOLDINGS LLC**
**Motion No. 003**

**Page 8 of 10**

8 of 10

showing, the conclusion can only be that JLJ has established Churchill's breach of Section 4.4. Indeed, the undisputed record is clear that Churchill has largely failed to provide JLJ with much of the Requested Documents and those documents would contain information relating to the Loan (*see* pltf 19-a ¶¶ 16-18; deft 19-a ¶¶ 46-55; NYSCEF # 130 at CH_0000167; Maheshwari tr 16:3, 20:21-21:19, 37:6-40:9, 38:14-21, 49:13-52:25, 54:7-14, 114:3-10, 159:12-161:25, and 178:21-179:8). JLJ has therefore established its entitlement to summary judgment on its breach of contract claim.

That Churchill offers a competing interpretation of Section 4.4 does not impact this result. Indeed, a "[m]ere assertion by one that contract language means something to [it], where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact" (*Unisys Corp. v Hercules Inc.*, 224 AD2d 365, 367 [1st Dept 1996] [internal quotation marks and citation omitted]). Because the terms of the Agreement are, in this case, clear, unambiguous, and only susceptible to one reasonable interpretation, summary judgment is warranted.

JLJ separately seeks summary judgment on its second cause of action for attorneys' fees pursuant to Section 7.10 of the Agreement, which provides that "[i]n the case of a dispute under this Agreement, the non-prevailing party shall pay the prevailing party's reasonable attorneys' fees and expenses in any action to enforce this Agreement" (Agreement § 7.10). Here, this lawsuit constitutes a dispute under this Agreement and there is no serious disagreement that, given JLJ's entitlement to summary judgment on its first cause of action, it is the prevailing party under Section 7.10 (*see* MOL at 22; Opp at 21; Reply at 14). Accordingly, JLJ is granted summary judgment on its second cause of action. An inquest shall be set to determine the amount of fees and costs to be recovered from Churchill.[5]

### Conclusion

For the foregoing reasons, it is hereby

ORDERED that plaintiff JLJ Capital LLC's motion, pursuant to CPLR 3212, for summary judgment is granted and the Clerk of the Court is directed to enter judgment accordingly in plaintiff's favor on its first cause of action; and it is further

ORDERED, ADJUDGED, and DECREED that defendant Churchill Real Estate Holdings LLC has breached the parties' participation agreement, entered into as of July 11, 2019, by failing to produce the Requested Documents (as defined above) and, as a result, defendant shall produce to plaintiff the Requested Documents; and it is further

---

[5] Given this court's disposition of JLJ's motion for summary judgment on its first cause of action, that branch of JLJ's motion seeking to strike Churchill's affirmative defenses is denied as academic.

**656966/2022 JLJ CAPITAL LLC vs. CHURCHILL REAL ESTATE HOLDINGS LLC**      **Page 9 of 10**
**Motion No. 003**

ORDERED that plaintiff's second cause of action is severed for an inquest to determine the amount of fees and costs to be awarded; and it is further

ORDERED that, to facilitate this inquest, plaintiff shall present the Clerk of the Court with a Note of Issue with Notice of Inquest, a copy of this Decision and Order, and any necessary fees within 30 days from the date of this Decision and Order; and it is further

ORDERED that, within 30 days of the filing of the Note of Issue with Notice of Inquest, counsel for plaintiff shall serve a copy of this Order with Notice of Entry, the Note of Issue with Notice of Inquest, and a completed Information Sheet, upon the Special Referee Clerk in the General Clerk's Office (Room 119), who is directed to place this matter on the calendar of the Special Referee's part; and it is further

ORDERED that such service upon the Special Referee Clerk shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page on the court's website at the address www.nycourts.gov/supctmanh); and it is further

ORDERED that counsel for plaintiff is directed to serve a copy of this order, together with notice of entry, upon defendant and the Clerk of the Court within 10 days of this order.

This constitutes the Decision and Order of the court.

| 01/07/2025 | | | | MARGARET A. CHAN, J.S.C. | |
|---|---|---|---|---|---|
| **DATE** | | | | | |
| **CHECK ONE:** | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | | |
| | ☒ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | | ☐ OTHER |
| **APPLICATION:** | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | | |
| **CHECK IF APPROPRIATE:** | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | | ☐ REFERENCE |

**656966/2022 JLJ CAPITAL LLC vs. CHURCHILL REAL ESTATE HOLDINGS LLC**
**Motion No. 003**

Page 10 of 10